```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                        EASTERN DIVISION
```

**DAVID L. FENNELL,**

        **Plaintiff,**

  vs.                                     **Civil Action 2:13-cv-996**
                                                      **Judge Graham**
                                                      **Magistrate Judge King**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

## REPORT AND RECOMMENDATION

**I.  Background**

This is an action instituted under the provisions of 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's application for supplemental security income.  This matter is now before the Court on plaintiff's *Statement of Errors*, Doc. No. 10, and the Commissioner's *Opposition to Plaintiff's Statement of Errors*, Doc. No. 15.

Plaintiff David L. Fennell filed his current application for benefits on December 13, 2010, alleging that he has been disabled since February 1, 2007.  *PAGEID* 240.  The application was denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

An administrative hearing was held on June 20, 2012, at which plaintiff, represented by counsel, appeared and testified, as did Judy F. Pack, who testified as a vocational expert.  *PAGEID* 59, 84.  In a decision dated July 12, 2012, the administrative law judge concluded

that plaintiff was not disabled from December 13, 2010, the date that the current application was filed, through the date of the administrative decision. *PAGEID* 74. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review it on August 21, 2013. *PAGEID* 35.

Plaintiff was 43 years of age on the date of the administrative law judge's decision. *See PAGEID* 74, 240. Plaintiff has at least a high school education, is able to communicate in English, and has past relevant work as a delivery driver. *PAGEID* 73, 114. Plaintiff has not engaged in substantial gainful activity since at least the current application date. *PAGEID* 62.

## II. Administrative Decision

The administrative law judge found that plaintiff's severe impairments consist of asthma; status post left shoulder hemiarthroplasty with subsequent hardware removal; chronic osteomyelitis; mild degenerative changes of the left ankle status post reconstructive surgery; hypertension; renal insufficiency; bipolar disorder, NOS; personality disorder; and alcohol abuse. *PAGEID* 62. The administrative law judge also found that plaintiff's impairments neither meet nor equal a listed impairment and leave plaintiff with the residual functional capacity ("RFC") to

> perform sedentary work as defined in 20 CFR 416.967(a), with additional limitations. The claimant may not perform work above shoulder level with the left upper extremity. The claimant must avoid concentrated exposures to fumes, odors, dust, gases, and poor ventilation along with extreme cold/heat. The claimant must further avoid hazards within the work setting. The claimant is able to understand,

2

>     remember, and carry out simple and some complex tasks and
>     instructions.  The claimant is able maintain attention and
>     concentration for two hours at a time within an eight hour
>     workday with normal breaks.  The claimant is able to adapt
>     to simple change in a work setting.  The claimant is also
>     able to respond appropriately to supervisors and coworkers
>     but is limited to occasional and superficial contact with
>     coworkers, supervisors and the general public.

*PAGEID* 63-65.  Although this residual functional capacity would preclude plaintiff's past relevant work, the administrative law judge relied on the testimony of the vocational expert to find that plaintiff is nevertheless able to perform a significant number of jobs in the national economy, including such jobs as lens inserter, sorter, and address clerk.  *PAGEID* 73-74.  Accordingly, the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act from December 13, 2010, through the date of the administrative decision.  *PAGEID* 74.

### III. Discussion

Pursuant to 42 U.S.C. § 405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards.  *Richardson v. Perales*, 402 U.S. 389 (1971); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005).  Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Buxton v. Haler*, 246 F.3d 762, 772 (6th Cir. 2001); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  This

Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Longworth,* 402 F.3d at 595.

Plaintiff, who is proceeding without the assistance of counsel, challenges the administrative law judge's evaluation of his shoulder impairment, asthma, and ankle impairment. Plaintiff noted that he underwent two shoulder surgeries after suffering a gunshot wound and that he cannot rotate his shoulder or move his arm "upward and outward" because he has no cartilage in his shoulder joint. *See Statement of Errors*, pp. 3-4. Plaintiff complains that the administrative law judge discounted the severity of his asthma and improperly relied on plaintiff's supposed non-compliance in evaluating the severity of his asthma. *See id*. at pp. 4-6. Plaintiff specifically contends in this regard that his asthma attacks occurred in the spring, during "high-tide" for asthma attacks, and that he was advised in 2006 not to use his inhaler for two hours prior to any scheduled procedure. *Id.* Finally, plaintiff argues that the

4

administrative law judge erred in evaluating plaintiff's ankle impairment; he alleges that he suffers from degenerative changes in his joints for which his medical provider recommended surgery, although that provider never scheduled that surgery.  *Id*. at p. 6.  The Court construes plaintiff's arguments as a challenge to the administrative law judge's RFC determination.

The RFC determination is an administrative finding of fact reserved to the Commissioner.  20 C.F.R. §416.927(d)(2), (3); *Edwards v. Comm'r of Soc. Sec.*, 97 F. App'x 567, 569 (6th Cir. 2004).  A claimant's RFC represents the most, not the least, that a claimant can do despite his impairments.  20 C.F.R. § 416.945(a); *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007).  In assessing a claimant's RFC, an administrative law judge must consider all relevant evidence, including medical source opinions, relating to the severity of a claimant's impairments.  *See* 20 C.F.R. §§ 416.927(d), 416.945(a).  Furthermore, courts have stressed the importance of medical opinions in determining a claimant's RFC, and have cautioned administrative law judges against relying on their own expertise in drawing conclusions from raw medical data.  *See Isaacs v. Astrue*, No. 1:08-CV-828, 2009 WL 3672060, at *10 (S.D. Ohio Nov. 4, 2009) (quoting *Deskin v. Comm'r Soc. Sec.*, 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008)).

In assessing plaintiff's RFC, the administrative law judge considered all the opinion evidence and gave extensive consideration to  plaintiff's shoulder impairment, asthma, and ankle impairment:

The  claimant  also  has  an  ankle  injury.   Treatment  notes

5

reflects [sic] he was shot in the ankle "years" prior to 2006 (B2F/16). However, the claimant alleged an onset of disability in 2007. Since then the claimant has had very little treatment for his ankle. In February 2012, imaging revealed an old gunshot wound with posttraumatic remodeling, predominantly involving the anterior process of the calcaneus and mild degenerative changes involving the subtalar joint and the calcaneal joint (B25F). In March 2012, foot specialist Timothy Holmes assessed the claimant with a remote gunshot wound to the left foot/ankle with foreign body in the soft tissue and mild osteoarthritis of the STJ (B32F). Dr. Holmes noted some eversion/inversion ROM discomfort around the subtalar joint; but the AJ ROM was within normal limits and there was no midfoot pain. The claimant complained of nerve like pain but Dr. Holmes noted this complaint was subjective. Treatment options discussed included injections and the superficial removal of the bullet fragments. The claimant was given a 60-day prescription of Percocet. Although the claimant documented he used a cane (B6E), Dr. Holmes did not prescribe a cane or document any continued use of ambulatory devices. Additionally, the claimant generally presents throughout the record with a normal gait and *without* any edema or complaints of foot swelling or difficulties walking and standing. Furthermore, no treating or examining physician has imposed any continued walking or standing restrictions. As such, the claimant's complaints of foot pain and limitations are not fully credible. Nevertheless, the undersigned has given the claimant the benefit of the doubt and taken his foot/ankle impairment into consideration by limiting the claimant to a sedentary exertional level.

The claimant [sic] shoulder's [sic] condition has generally been described as chronic osteomyelitis (B18F). In 2008, the claimant had a gunshot wound to his left proximal humerus (B18F/14, B1F). He underwent an open reduction and internal fixation. He complained of continued stiffness however, six months postoperatively the claimant failed to attend physical therapy as recommended (B4F/31). The undersigned takes note that in a previous hearing, the claimant reported he was enrolled at Franklin University from October 2009 until at least April 2010 (B1A/15). This of course implies that despite his ongoing shoulder condition/treatment he was able to perform some fine/gross motor movements. Shoulder pain was noted but again so is the claimant's non-compliance with therapy (B7F/1). The claimant received treatment for wound infections and subsequently the hardware was removed in July 2011 (B18F). In September, the claimant presented with a normal range of

6

motion with no edema and no tenderness (B18F/14). In October 2011, the claimant underwent a surgical procedure and postoperatively was assessed with a retained antibiotic spacer in the left shoulder, a history of chronic osteomyelitis and heterotopic ossification (B19F). The claimant's pain was controlled with medication (B19F/1). Subsequent imaging shows stable post surgical appearance of a left shoulder hemiarthroplasty with no evidence of hardware failure or loosening (B23F). April 2012 imaging continued to show improvement and revealed stable postsurgical changes of left shoulder hemiarthroplasty with no evidence of acute hardware failure; stable heterotopic bone formation and chronic periosteal changes; and stable degenerative changes of the acromioclavicular joint (B30F/8). April 2012 treatment notes also reflect the claimant's pain is dulled with medication, which is consistent with his testimony that medication provided some relief (B33F). The claimant had some stiffness but it was secondary to weakness. Continued strengthening was recommended but no further restrictions were assessed (B30F/3). In May 2012, the claimant admitted to his physical therapist that he did not experience any "real pain" just stiffness (B31F/3). The claimant even presented for therapy without pain (0/10) and stated, "it's a good day" (B31F/4). Thus, it is curious how just two weeks later the claimant presented to his medical provider with chronic shoulder pain (B33F/1). He was subsequently prescribed additional narcotic medication (Id.). In June 2012, the claimant had some decreased range of motion (B33F/2). However, physical therapy records show continued improvement and fair symptom control (B26F/4, B31F). Based on the aforementioned the undersigned finds the claimant has some limitation with respect to his left arm and has appropriately restricted the claimant from performing work above shoulder level with the left upper extremity.

The claimant has a history of breathing problems generally characterized as asthma. Therapy includes medication/breathing treatments. The record reflects that his symptoms have waxed and waned, but this is primarily due to the claimant's non-compliance with his medication regimen. The claimant has presented for emergent care frequently because he has run out of medicine (B1F/31, 46, B4F/9, B10F/2, B24F/4). In May 2011, the claimant experienced an exacerbation of asthma. He was treated, released and instructed to follow up with his primary care physician (B9F). Later that same month the claimant's asthma was uncontrolled again because of medication non-compliance (B10F). Providers noted the claimant's

7

> exacerbations frequently occur when he runs out of Advair (B24F/4). The claimant also has failed to comply with medical advice. In April 2009, Dr. Mellissa Kerg noted, "*He and I have actually been down this road before. I told him that he seems to be hardheaded in that the [sic] does not want to stay long enough for his symptoms to clear . . . he should wait at least several hours until his oxygenation is improved and the [sic] that he is breathing better. He is refusing. He said he can do his treatments at home. He does not want to be here anymore so he is leaving against medical advice*" (B1F/28, 29).
>
> The claimant has experienced some weather related breathing difficulties and testified that this prevents him from working (B1F, B4F). The undersigned finds some inconsistencies in the claimant [sic] allegations. In particular, the claimants [sic] breathing symptoms improve with appropriate treatment. Also when questioned, the claimant denied that he smoked cigarettes. Yet a review of the record reveals that not only does the claimant occasionally smoke "black and milds", he also occasionally smokes marijuana and uses crack (B8F/1, 13). Smoking cessation was advised. Although the undersigned finds any substance (or alcohol) abuse is non-material in rendering a decision, the claimant's current use of cigarettes and illegal substances is unclear because the claimant has made inconsistent statements about his use to providers. However, in October 2011, the claimant still reported occasional use of marijuana, which is against the advice of medical professionals (B18F/6). The claimant's true motive for his various emergent presentations is questionable because as discussed elsewhere in this decision the claimant has exhibited drug-seeking behaviors. Furthermore, his alleged breathing problems do not prevent him from smoking marijuana; nor does the weather prevent the claimant from making daily visits to the library (discussed further below). As such, the undersigned finds the severity of the claimant's breathing problems is only partially credible. The RFC instruction that the claimant must avoid work environments with concentrated exposure to fumes, odors, dust, gases, and poor ventilation along with extreme cold/heat, appropriately addresses the claimant's limitations, which result from his diagnosis of asthma.

*PAGEID* 66-68 (emphasis in original).

The Court finds that the administrative law judge's evaluation of plaintiff's shoulder impairment, asthma, and ankle impairment, as

well as her discussion of plaintiff's non-compliance with treatment recommendations, is supported by substantial evidence, to which the administrative law judge referred throughout her decision. Moreover, the physical limitations reflected in the administrative law judge's RFC assessment are more restrictive than those suggested by the opinion evidence, *see PAGEID* 157-161 (limiting plaintiff to a light exertional level with no environmental limitation for fumes, odors, dusts, gases, poor ventilation, etc.), 173-77 (same), 493-97, and no doctor offered an opinion of greater limitation of function than that reflected in the administrative law judge's RFC assessment. Indeed, plaintiff points to no evidence of greater limitation. Rather, plaintiff generally argues that he has been diagnosed with shoulder and ankle impairments and asthma, and with other impairments; however, the mere diagnosis of a condition is not determinative of the severity of that condition, *see Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 713 (6th Cir. 2013) ("But not every diagnosable impairment is necessarily disabling."); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)(citing *Foster v. Brown*, 853 F.2d 483, 489 (6th Cir. 1988)), and there is substantial evidence in the record that plaintiff's impairments are not as limiting as he alleges.

In short, the Court concludes that the administrative law judge applied all proper standards and that her decision is supported by substantial evidence. It is therefore **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Detroit Fed'n of Teachers, Local 231 etc.*, 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

September 11, 2014                              *s/Norah McCann King*
                                                                     Norah M<sup>c</sup>Cann King
                                                    United States Magistrate Judge